BRUCE C. JANKE (SBN 75293)
16965 Roberts Rd., Suite A
Los Gatos CA 95032-4556
Telephone: (408) 356-6556
Email: B_Janke@MSN.com

Attorney for Defendant
JINNIE CHAO

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re JINNIE JINHUEI CHANG CHAO,<br><br>Debtor. | Adversary proceeding no. 16-3023<br><br>Bankruptcy case no. 15-31519<br><br>• ANSWER TO COMPLAINT<br>• COUNTERCLAIM<br>• DEMAND FOR JURY TRIAL |
| ARDESHIR SALEM et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>JINNIE JINHUEI CHANG CHAO et al.,<br><br>Defendants, | |
| JINNIE JINHUEI CHANG CHAO,<br><br>Counterclaimant,<br><br>v.<br><br>ARDESHIR SALEM,<br><br>Counterdefendant. | |

## RULE 7008 STATEMENT

1. Pursuant to Fed. R. Bankr. P. 7008 and Local Bankruptcy Rule 7008-1, defendant Jinnie Chao does not consent to entry of a final order or judgment by the Bankruptcy Court.

## ANSWER

### General Denial

2. Pursuant to Fed. R. Bankr. P. 8(c), defendant generally denies all of the allegations of the Complaint, except as to those matters specifically admitted below.

### Specific Admissions and Denials

3. Paragraph 1: Defendant admits the allegations of this paragraph, except she denies the validity of the alleged state court claims.

4. Paragraph 2: Admitted, except that defendant denies that the Court's jurisdiction derives from 11 U.S.C. §§ 523, 727.

5. Paragraph 6: Defendant admits she is a natural person and that she filed for relief under Chapter 11 of the U.S. Bankruptcy Code.

6. Paragraph 8: Defendant admits she was a patient of Ardeshir Salem and that she made multiple visits to Dr. Salem's office.

7. Paragraph 9: Defendant admits she learned that Dr. Salem was opening the Rejuv Clinic in the space next door to his dental office, which was to provide beauty and anti-aging services.

8. Paragraph 11: Defendant admits she performed work at the Rejuv clinic.

9. Paragraph 14: Defendant admits that she and Dr. Salem discussed entering into other business ventures together. Defendant admits she performed administrative and other tasks at the dental practice.

10. Paragraph 15: Defendant admits that Dr. Salem gave her signature authority over certain of Salem's bank accounts, including at Heritage Bank, but denies that such authority was limited.

11. Paragraph 19: Defendant admits that Dr. Salem met Tajo Chu. Defendant lacks information or belief sufficient to permit her to admit or deny what was said in the meetings of Salem and Chu and as to what retirement account transactions Salem made.

12. Paragraph 22: Defendant admits she offered to, and did, assist Dr. Salem with this dental

practice.

13. Paragraph 25: Defendant lacks information or belief sufficient to permit her to admit or deny what Dr. Salem learned, discovered, is informed of, and believes, what he was suspicious of, and where he went.

14. Paragraph 27: Defendant lacks information or belief sufficient to permit her to admit or deny what Dr. Salem is informed of, learned, and believes.

## Affirmative Defenses

15. The Complaint was not filed within the applicable limitation periods set forth in relevant statutes, including but not limited to Cal. Civ. Proc. Code §§ 338, 343 and 11 U.S.C. § 108(c).

16. The damages alleged in the Complaint are barred to the extent that plaintiffs failed to reasonably mitigate them.

17. By their actions, plaintiffs impliedly waived their rights alleged in the Complaint.

18. By their actions, plaintiffs are estopped to recover.

19. Plaintiffs are barred from recovery under the doctrine of unclean hands.

20. Plaintiffs are barred from recovery under the doctrine of laches.

21. Plaintiffs are barred from recovery because they ratified and/or consented to all of the acts and conduct complained of.

22. Defendant sustained damages as a legal result of the conduct of plaintiffs and made a demand for money at a point in time when the demand and claim for damages were not barred by the statute of limitations. Defendant is therefore entitled to a set-off in the amount of said damages against any damages recovered by plaintiffs.

## COUNTERCLAIM
### Against Plaintiff Ardeshir Salem Only

### Jurisdiction

23. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §157.

### Parties

24. Plaintiff Jinnie Chao ("Chao") is an individual and the debtor herein.

25. Counterdefendant Ardeshir Salem ("Salem") is an individual residing in the County of Santa Clara, licensed to practice dentistry by the Dental Board of California, and the principal of defendant A. Salem D.D.S., Inc.

## Facts

26. In 2005, Chao began receiving dental treatment from Salem. Salem used the doctor-patient relationship to gain Chao's trust and confidence. Salem then abused that trust and confidence to begin a series of fraudulent and deceitful business arrangements and breaches of contract whereby Salem ultimately scammed Chao out of at least $1.5 million.

27. In or about May 2007, Salem hired Chao to manage Salem's dental practice at a salary of $13,500 per month. In September 2011, the parties agreed to increase Chao's salary to $20,000 per month.

28. Salem frequently traveled out of the state and country. He gave Chao a written power of attorney and expressly directed her to "take care of everything" concerning his dental practice and all of his personal financial affairs, including paying all business and personal expenses, employee wages, and other business overhead. Salem made Chao an authorized signatory on his business and personal bank accounts.

29. Salem charged Chao $45,000 to perform certain dental work. Salem performed the work with gross negligence and incompetence causing Chao years of great pain and suffering. Salem performed unnecessary root canals on Chao and other unnecessary work in order to increase the fees charged. Salem charged Chao an additional $20,000 to repair his previous work, but then refused to do the repairs and instead insisted that Chao have the work done by Salem's unlicensed employee. There is a balance of at least $20,000 remaining in Chao's account with Salem for unperformed dental work. Each time that Chao requested that Salem perform the dental work he had agreed to do, Salem retaliated against, punished, and abused Chao in her employment.

30. Salem used his domineering personality to prey upon Chao over a seven-year period with a combination of cajoling, bullying, abuse, intimidation, guilt, and appeals to Chao's sympathetic nature and Christian charity. Whenever Salem needed money, he would persuade Chao to give him more either with sob stories about his financial woes, which he always claimed

ANSWER TO COMPLAINT; COUNTERCLAIM; JURY DEMAND

were not his fault, or with representations that he and Chao were partners and would share millions of dollars in profits if only Chao would loan him money and handle management of all of his business and personal affairs. Salem used the money loaned to him by Chao to finance extravagant vacations, parties, and personal luxuries until he ran out of money, whereupon he would reappear and extract more money from Chao. Salem persuaded Chao to make loans by telling her to prepare promissory notes, which he would then refuse to sign. Subsequent to January 26, 2010, Salem acknowledged and reaffirmed his total debt to Chao both orally and by making interest-only installment payments to Chao.

31. Salem gained Chao's trust in order to find weaknesses that he could exploit. In particular, after Salem discovered that Chao is a devout Christian, Salem repeatedly used guilt to exploit Chao's sense of charity. Salem went so far as to join Chao's church and participate in various Christian functions in order to further convince Chao of his feigned sincerity and trustworthiness.

32. When Chao objected to Salem's actions, Salem verbally abused and threatened that he would fire her and have her killed by the "Persian Mafia." When Chao attempted to address the problems with the practice or to discuss pending lawsuits against Salem, Salem would throw loud shouting and cursing tantrums, screaming at Chao that she was a "thief," "bitch," "psycho," "black widow," "snake," "peasant," "hypocritical Christian," and "stupid Chinese."

**First Claim for Relief**
**Breach of Oral Contract**

33. Chao incorporates the allegations of all previous paragraphs.

34. Salem asked Chao for a loan of $350,000 for the purpose of opening a business called Rejuv MedSpa in connection with his dental practice. Salem promised to repay the loan with interest on or before May 17, 2007. Based on Salem's oral promise to repay, Chao wrote checks to Salem for $275,000 and $75,000. In or about March 2007, Salem refused to sign a promissory note evidencing the loan.

35. Salem breached his promise by failing and refusing to repay the loan. No part of the principal has been repaid to Chao. Accordingly, the sum of $350,000 plus interest according to

proof is now due, owing, and unpaid by Salem to Chao.

36. After January 26, 2010, Salem repeatedly reaffirmed that he owed the debt to Chao, renewed his promise to pay, and made installment payments of interest only on the loan.

**Second Claim for Relief**
**Fraud by False Promise**

37. Chao incorporates the allegations of the preceding paragraphs.

38. At the time Salem made the promise described in the preceding claim for relief, he did not intend to perform it.

39. Said promise was a necessary and essential part of the transaction.

40. Salem intended that Chao rely on the promise.

41. Chao did rely on Salem's promise by giving Salem the money. Chao's reliance was reasonable because of Salem's continued promises of performance and because Salem had entrusted Chao with his business affairs as evidenced by the power of attorney given to Chao.

42. Salem failed to perform the promised act by refusing to repay the money to Chao.

43. Chao sustained harm by Salem's failure to perform his promise consisting of the loss of $350,000.

44. Chao sustained further harm by Salem's failure to perform his promise consisting of severe emotional distress and other noneconomic damages in an amount according to proof.

45. Chao's reliance on Salem's promise was a substantial factor in causing the harm to Chao.

46. Salem's fraudulent conduct was malicious in that Salem intended to cause monetary injuries and emotional distress to Chao. Said conduct was despicable and carried on by Salem with a willful and conscious disregard of Chao's right to be free of financial loss and emotional distress. Salem's conduct was oppressive in that it subjected Chao to cruel and unjust financial and emotional hardship in conscious disregard of Chao's rights. Accordingly, Chao is entitled to punitive damages according to proof.

### Third Claim for Relief
### Breach of Oral Contract

47. Chao incorporates the allegations of the preceding paragraphs.

48. Salem represented to Chao that Salem was unable to continue making the mortgage payments on the property owned by Salem located at 339 Surber Dr., San Jose, California, in which Salem's mother resided ("property"). Chao and Salem orally agreed that Chao would pay to prepare the property for sale by remodeling and refurbishing it. Salem promised he would repay Chao from the sale proceeds.

49. Pursuant to that agreement, Chao paid costs of improvements to the property in the approximate amount of $69,000.

50. Salem breached his promise by failing and refusing to sell the property, failing to make mortgage payments, allowing the property to be foreclosed, and failing to repay the improvement costs to Chao. No part of said money has been repaid to Chao. Accordingly, the sum of $69,000 plus interest is now due, owing, and unpaid by Salem to Chao.

51. After January 26, 2010, Salem repeatedly reaffirmed that he owed the debt to Chao, renewed his promise to pay, and made installment payments of interest only on the loan.

### Fourth Claim for Relief
### Fraud by False Promise

52. Chao incorporates the allegations of the preceding paragraphs.

53. At the time Salem made the promise described in the preceding claim for relief, he did not intend to perform it. Salem's subjective intent not to perform the promise is implied from the following facts: (a) Salem persuaded Chao to pay the costs of improvements to the property by way of coercion, consisting of threats to terminate Chao's employment and duress and oppression consisting of shouting and intimidation followed by pleading, cajoling, flattery, guilt, feigned participation in Chao's religion, and appeals to Chao's sympathy and Christian charity; (b) Salem further obtained the loan by falsely promising to include Chao in future business ventures, none of which Salem pursued; (c) Salem refused Chao's request to sign a promissory note evidencing the loan; (d) Despite specifically promising to repay Chao from the proceeds from the sale of the

property, Salem refused to take necessary steps to sell the property; (e) Salem failed to make mortgage payments on the property, which caused foreclosure of the mortgage, knowing that the foreclosure would assure that there would be no sale proceeds from which to repay Chao; (f) Salem made no attempt to repay the loan; (g) After the loan here alleged, Salem obtained multiple additional loans from Chao, including but not limited to the loans alleged in the following causes of action. In each case, Salem obtained the new loans by means of multiple assurances of repayment of the loan here alleged. Salem made these assurances for the purpose of, and with the intent to, fraudulently extract additional money from Chao.

54. Because of Salem's repeated promises of repayment supported by the trust Salem had engendered in Chao and the representations set forth in the preceding paragraph, Chao did not discover Salem's fraudulent intent not to perform his promise until after January 26, 2009.

55. Salem had legal duties, independent of the contract. These duties included (a) a duty not to coerce, threaten, or intimidate Chao; (b) a duty not to deceive Chao into trusting Salem by pretending to have become a born-again Christian, by appealing to Chao's Christian sympathy, and promising to include Chao in Salem's business ventures; (c) a duty to make best efforts to perform the contract in good faith by selling the property as agreed; (d) a duty not to prevent his own performance of the contract by refusing to sell the property and allowing it to go into foreclosure. Salem breached each of said duties as herein alleged.

56. Salem knew that $69,000 was a substantial sum of money and that a loss of that amount by Chao would cause Chao severe unmitigable harm in the form of mental anguish, personal hardship, and substantial consequential damages.

57. Said promise was a necessary and essential part of the transaction because Chao would not have agreed to pay the costs of remodeling and refurbishing the property without Salem's promise.

58. Salem intended that Chao rely on the promise of repayment and intended to cause Chao to act by paying the costs of improving the property. This intent can be inferred from the promise itself and from Salem's acceptance of Chao's payment of the costs of improving the property.

59. Chao did rely on Salem's promise by paying the costs of improving the property. Chao's

reliance was reasonable because of Salem's conduct in gaining Chao's trust, as alleged above and because of Salem's continued promises to sell or prevent foreclosure.

60. Salem failed to perform the promised act by refusing to repay the money to Chao, refusing to take necessary steps to sell the property, and failing to make mortgage payments on the property, which caused foreclosure of the mortgage, knowing that the foreclosure would assure that there would be no sale proceeds from which to repay Chao.

61. Chao sustained harm by Salem's failure to perform his promise consisting of the loss of $69,000.

62. Chao sustained further harm by Salem's failure to perform his promise consisting of severe emotional distress and other noneconomic damages in an amount according to proof.

63. Chao's reliance on Salem's promise was a substantial factor in causing the harm to Chao in that but for said reliance, Chao would not have paid the cost of improving the property.

64. Salem's fraudulent conduct was malicious in that Salem intended to cause monetary injuries as well as emotional injuries to Chao. Said conduct was despicable and carried on by Salem with a willful and conscious disregard of Chao's right to be free of financial loss and emotional distress. Salem's conduct was oppressive in that it subjected Chao to cruel and unjust financial and emotional hardship in conscious disregard of Chao's rights. Accordingly, Chao is entitled to punitive damages according to proof.

**Fifth Claim for Relief**
**Breach of Oral Contract**

65. Chao incorporates the allegations of the preceding paragraphs.

66. Salem told Chao that his credit card companies were charging him 18 to 24 percent interest and asked Chao to help him. Chao transferred Salem's credit card account balances totaling approximately $150,000 to her credit card accounts, which had lower interest rates. Salem agreed to repay Chao in monthly installments of principal and interest at the rate being charged to Chao on her accounts.

67. Salem breached his promise by failing and refusing to repay Chao. Chao was forced to pay off the amounts added to her credit card account balances with her home equity line of credit.

Accordingly, the sum of $150,000 plus interest is now due, owing, and unpaid by Salem to Chao.

68. After January 26, 2010, Salem repeatedly reaffirmed that he owed the debt to Chao, renewed his promise to pay, and made installment payments of interest only on the loan.

**Sixth Claim for Relief**
**Fraud by False Promise**

69. Chao incorporates the allegations of the preceding paragraphs.

70. At the time Salem made the promise alleged in the preceding claim for relief, he did not intend to perform it. Salem's subjective intent not to perform the promise is implied from the following facts: (a) Salem persuaded Chao to pay off his credit card debt by way of coercion, consisting of threats to terminate Chao's employment and duress and oppression consisting of shouting and intimidation followed by pleading, cajoling, flattery, guilt, feigned participation in Chao's religion, and appeals to Chao's sympathy and Christian charity; (b) Salem falsely promised to include Chao in future business ventures, none of which Salem pursued; (c) Salem refused Chao's request to sign a promissory note evidencing the loan; (d) Salem made no attempt to repay the loan; (e) After the loan here alleged, Salem obtained multiple additional loans from Chao, including but not limited to the loans alleged in the following causes of action. In each case, Salem obtained the new loans by means of multiple assurances of repayment of the loan here alleged. Salem made these assurances for the purpose of, and with the intent to, fraudulently extract additional money from Chao.

71. Because of Salem's repeated promises of repayment supported by the trust Salem had engendered in Chao and the representations set forth in the preceding paragraph.

72. Salem had legal duties, independent of the contract alleged in the preceding claim for relief. These duties included (a) a duty not to coerce, threaten, or intimidate Chao; (b) a duty not to deceive Chao into trusting Salem by pretending to have become a born-again Christian, by appealing to Chao's Christian sympathy, and promising to include Chao in Salem's business ventures. Salem breached each of said duties as herein alleged.

73. Salem knew that $150,000 was a substantial sum of money and that a loss of that amount by Chao would cause Chao severe unmitigable harm in the form of mental anguish, personal

hardship, and substantial consequential damages.

74. Said promise was a necessary and essential part of the transaction.

75. Salem intended that Chao rely on the promise.

76. Chao did rely on Salem's promise by paying off Salem's credit card debt. Chao's reliance was reasonable because of Salem's continued promises of performance, Salem's pleading, cajoling, flattery, guilt, feigned participation in Chao's religion, and appeals to Chao's sympathy and Christian charity, Salem's promises to include Chao in future business ventures, and because Salem had entrusted Chao with his business affairs as evidenced by the power of attorney given to Chao.

77. Salem failed to perform the promised act by refusing to repay the money to Chao.

78. Chao sustained harm by Salem's failure to perform his promise consisting of the loss of $150,000.

79. Chao sustained further harm by Salem's failure to perform his promise consisting of severe emotional distress and other noneconomic damages in an amount according to proof.

80. Chao's reliance on Salem's promise was a substantial factor in causing the harm to Chao.

81. Salem's fraudulent conduct was malicious in that he intended to cause monetary injury to Chao. Said conduct was despicable and carried on by Salem with a willful and conscious disregard of Chao's right to be free of financial loss and emotional distress. Salem's conduct was oppressive in that it subjected Chao to cruel and unjust financial and emotional hardship in conscious disregard of Chao's rights. Accordingly, Chao is entitled to punitive damages according to proof.

### Seventh Claim for Relief
### Breach of Oral Contract

82. Chao incorporates the allegations of the preceding paragraphs.

83. Chao loaned Salem approximately $60,000, which Salem used as a down payment to purchase two rental properties in Texas. Salem orally promised to repay the loan.

84. Salem breached his promise by failing and refusing to repay. Accordingly, the sum of $60,000 plus interest is now due, owing, and unpaid by Salem to Chao.

## Eighth Claim for Relief
## Fraud by False Promise

85. Chao incorporates the allegations of the preceding paragraphs.

86. At the time Salem made the promise alleged in the preceding claim for relief, he did not intend to perform it. Salem's subjective intent not to perform is implied from the following facts: (a) Salem persuaded Chao to make the loan by way of coercion, consisting of threats to terminate Chao's employment and duress and oppression consisting of shouting and intimidation followed by pleading, cajoling, flattery, guilt, feigned participation in Chao's religion, and appeals to Chao's sympathy and Christian charity; (b) Salem falsely promised to include Chao in future business ventures, none of which Salem pursued; (c) Salem refused Chao's request to sign a promissory note evidencing the loan; (d) Salem made no attempt to repay the loan; (e) After the loan here alleged, Salem obtained multiple additional loans from Chao, including but not limited to the loans alleged in the following causes of action. In each case, Salem obtained the new loans by means of multiple assurances of repayment of the loan here alleged. Salem made these assurances for the purpose of, and with the intent to, fraudulently extract additional money from Chao.

87. Salem had legal duties, independent of the contract alleged in the preceding Claim for Relief. These duties included (a) a duty not to coerce, threaten, or intimidate Chao; (b) a duty not to deceive Chao into trusting Salem by pretending to have become a born-again Christian, by appealing to Chao's Christian sympathy, and promising to include Chao in Salem's business ventures. Salem breached each of said duties as herein alleged.

88. Said promise was a necessary and essential part of the transaction.

89. Salem intended that Chao rely on the promise.

90. Chao did rely on Salem's promise by giving Salem the money. Chao's reliance was reasonable because of Salem's continued promises of performance and because Salem had entrusted Chao with his business affairs as evidenced by the power of attorney given to Chao.

91. Salem failed to perform the promised act by refusing to repay the money to Chao.

92. Chao sustained harm by Salem's failure to perform his promise consisting of the loss of $60,000.

93. Chao sustained further harm by Salem's failure to perform his promise consisting of severe emotional distress and other noneconomic damages in an amount according to proof.

94. Chao's reliance on Salem's promise was a substantial factor in causing the harm to Chao.

95. Salem's fraudulent conduct was malicious in that Salem intended to cause monetary and emotional injuries to Chao. Said conduct was despicable and carried on by Salem with a willful and conscious disregard of Chao's right to be free of financial loss and emotional distress. Salem's conduct was oppressive in that it subjected Chao to cruel and unjust financial and emotional hardship in conscious disregard of Chao's rights. Accordingly, Chao is entitled to punitive damages according to proof.

### Ninth Claim for Relief
### Breach of Oral Contract

96. Chao incorporates the allegations of the preceding paragraphs.

97. Salem hired Chao to help Salem obtain a loan modification on his home mortgage and promised to pay all necessary expenses.

98. In reliance on Salem's promise, Chao paid $2500 of her own funds to a loan modification consultant in Florida on Salem's behalf.

99. Salem failed to pursue the modification and failed and refused to repay the consultant's fee to Chao.

100. No part of sum has been paid. Accordingly, the sum of $2500 plus interest remains due, owing, and unpaid from Salem to Chao.

### Tenth Claim for Relief
### Breach of Oral Contract

101. Chao incorporates the allegations of the preceding paragraphs.

102. Chao paid Salem $65,000 for which Salem agreed to do certain dental work on Chao.

103. Salem breached the agreement by not completing the agreed dental work. Chao's account with Salem currently has a credit balance of $20,000 for unperformed services. No part of sum has been refunded to Chao. Accordingly, the sum of $20,000 plus interest remains due, owing,

and unpaid from Salem to Chao.

### Eleventh Claim for Relief
### Slander Per Se

104. Chao incorporates the allegations of the preceding paragraphs.

105. Salem made one or more of the following statements about and concerning Chao that Chao had committed the crime of theft and that Chao was a "psycho" who suffered from a mental disease or disorder.

106. Said statements are false.

107. Salem failed to use reasonable care to determine the truth or falsity of the statements.

108. The statements were made to persons other than Chao, including coworkers, patients, and Chao's bankers.

109. The persons who heard the statements reasonably understood that they were about Chao.

110. The persons who heard the statements reasonably understood them to mean that Chao had committed a crime and that she suffered from a loathsome disease. The statements tended directly to injure Chao in respect to her profession or business, by imputing to her general disqualification in those respects which her occupation peculiarly requires.

111. Chao is entitled to damages for assumed harm to her reputation according to proof.

112. Chao sustained economic damages consisting of injury to her business, profession, and occupation, and the reduction of her future employability and income according to proof.

113. Chao sustained noneconomic damages consisting of severe emotional distress, shame, mortification, hurt feelings, and other noneconomic damages according to proof.

114. Salem's statements were a substantial factor in causing the harm and damages to Chao.

115. Salem's conduct was malicious in that he intended to cause Chao monetary and emotional injuries. The conduct was despicable and carried on with a willful and conscious disregard of Chao's right to be free of financial and emotional injury. The conduct was oppressive in that it subjected Chao to cruel and unjust financial and emotional hardship in conscious disregard of Chao's rights. Accordingly, Chao is entitled to punitive damages according to proof.

Case: 16-03023   Doc# 7   Filed: 04/25/16   Entered: 04/25/16 11:40:52   Page 14 of 17
14
Answer to Complaint; Counterclaim; Jury Demand

## Twelfth Claim for Relief
## Breach of Written Contract

116. Chao incorporates the allegations of the preceding paragraphs.

117. Chao and Salem executed a Promissory Note by the terms of which Chao agreed to loan Salem $100,000 and Salem agreed to repay that amount, or such lesser amount as shall equal the outstanding principal amount, together with interest from said date at six percent per annum. A true copy of the note is attached hereto, marked Exhibit 1, and incorporated herein by reference.

118. On said date, pursuant to the terms of the note, Chao transferred $10,000 to Salem.

119. Salem breached the note by failing to repay said amount, or any part thereof.

120. The sum of $10,000 is now due and payable by Salem to Chao together with interest at the rate of six per cent per annum from December 22, 2011 to the date of judgment.

## Thirteenth Claim for Relief
## Wrongful Discharge in Violation of Public Policy

121. Chao incorporates the allegations of the preceding paragraphs.

122. Salem herein is the Salem in Santa Clara County Superior Court case no. 1-11-CV-208104, entitled Martinez v. Salem.

123. The court entered default against Salem. Salem and his attorneys began preparing a motion for an order vacating the default.

124. Salem and his attorneys prepared a declaration of facts in support of the motion for the signature of Chao and asked Chao to sign the declaration under penalty of perjury.

125. Chao told Salem's attorneys that she would not sign the declaration because it contained statements that Chao knew to be false.

126. On or about January 11, 2012, Salem demanded that Chao sign the declaration. When Chao refused to do so, Salem became extremely angry and discharged Chao from her employment.

127. Chao's refusal to sign the false declaration was a motivating reason in Chao's discharge.

128. Chao sustained harm by the wrongful discharge consisting of lost wages in the amount of $20,000 per month from date of discharge to present and continuing.

129. Chao sustained harm by the wrongful discharge consisting of severe emotional distress and other noneconomic damages in an amount according to proof.

130. Salem's fraudulent conduct was malicious in that Salem intended to cause monetary and emotional injuries to Chao. Said conduct was despicable and carried on by Salem with a willful and conscious disregard of Chao's right to be free of financial loss and emotional distress. Salem's conduct was oppressive in that it subjected Chao to cruel and unjust financial and emotional hardship in conscious disregard of Chao's rights. Accordingly, Chao is entitled to punitive damages according to proof.

## **PRAYER FOR RELIEF**

WHEREFORE, Chao prays for judgment as follows:

(1) That the claims of plaintiffs are dischargeable;

(2) That plaintiffs take nothing by their complaint;

(3) Economic damages resulting from breaches of contracts according to proof;

(4) Economic damages consisting of lost wages from the date of Chao's discharge to present in the approximate amount of $119,000;

(5) Economic damages consisting of loss of future earnings according to proof;

(6) Noneconomic damages according to proof;

(7) Punitive damages according to proof;

(8) Interest as allowed by law;

(9) Costs.

## **DEMAND FOR JURY TRIAL**

Defendant demands a trial by jury.

/s/
_____
BRUCE C. JANKE (SBN 75293)
16965 Roberts Rd., Suite A
Los Gatos CA 95032-4556
Telephone: (408) 356-6556
Email: B_Janke@MSN.com
Attorney for
JINNIE CHAO

# DECLARATION OF SERVICE BY MAIL AND EMAIL

The undersigned declares:

I am over the age of 18 years, a resident of Santa Clara County California, and not a party to, nor interested in, this action. My address is 16965 Roberts Rd., Suite A, Los Gatos, California 95032.

On the date of my signature below, I served copies of

ANSWER TO COMPLAINT; COUNTERCLAIM; DEMAND FOR JURY TRIAL

on the parties to this action as follows:

| | |
|---|---|
| Anthony E. Pagkas<br>Christopher J. D'Anjou<br>Pagkas & D'Anjou, LLP<br>777 N. 1st St., Ste. 250<br>San Jose CA 95112-6338<br><br>Email: PagkasDanjouLLP@GMail.com | Attorneys for plaintiffs/counterdefendant |
| Onyinye N. Anyama<br>Anyama Law Firm<br>18000 Studebaker Rd., Ste. 700<br>Cerritos CA 90703<br><br>Email: Onyi@AnyamaLaw.com | Attorney for debtor |

by depositing said copies with the U.S. Postal Service at Los Gatos California, in sealed envelopes, addressed as set forth above, with correct prepaid first class postage affixed thereto; and by transmitting said copies as attachments to emails addressed as set forth above.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed April 11, 2016 at Los Gatos, California.

/s/
_____
BRUCE C. JANKE